IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff, | CIV. NO. S-09-1852 JAM GGH |
|   vs. | |
| JOSEPH J. DE KELLIS, | |
|     Defendant. | FINDINGS AND RECOMMENDATIONS; ORDER |

*Introduction and Summary*

      Although the complaint does not so allege, the United States has brought an action pursuant to the Federal Debt Collections Procedures Act, 28 U.S.C. 3001, to collect on a long ago defaulted student loan. Apparently, defendant De Kellis, a practicing attorney, took out substantial student loans for law school and then sought a consolidation loan from Sallie Mae in November of 1992. The government contends that the consolidation loan was a federally guaranteed type of student loan. He received those monies which paid off his former student loans, started payment on the consolidated loan in April of 1993, and soon defaulted in August of 1994 (according to De Kellis). Bankruptcy proceedings under Chapter 7 commenced soon thereafter; DeKellis sought to discharge his then young student consolidation loan obligations, ostensibly, because of a failed business venture. Whether the consolidation loan could be

1

discharged is a prime issue in this case.

The guarantee process worked very slowly, and it was not until 2006 that the loan repayment rights were assigned to the Department of Education, which had payed off the entirety of the loan. This action was not brought until mid-2009.

De Kellis believes that his consolidation loan was a "private loan" fully dischargeable in bankruptcy. Without specific explanation, he asserts that he sought a private consolidation loan from Sallie Mae (at a higher interest rate and with other non-beneficial terms) to "extricate[] myself from government sponsored programs. " Of course, if truly a private loan, this extrication would open the door for this debt to be discharged in bankruptcy.

The undersigned finds for purposes of DeKellis' motion to dismiss and the government's cross-motion for summary judgment, that no issue of fact exists to controvert the government's showing that the loan consolidation sought by DeKellis was a FFELP loan, not dischargeable in bankruptcy. The government student loan program weaves a web from which it is difficult to extricate oneself unless the loans are actually paid back. The government is entitled to summary judgment on all issues save for the actual computation of what remains due and owing.

<u>Issues</u>

<u>1. Whether the loan at issue was part of the a guarnateed student loan provisions of federal law, and hence non-dischargeable;</u>

<u>2. Whether any subjective or other wise erroneous belief about the loan predicates can change the nature of the loan received;</u>

<u>3. Whether, in any event, a *material* issue of fact exists concerning the nature of the loan;</u>

<u>4. Whether the Espinosa Supreme Court decision precludes the government from seeking to recover on the loan;</u>

<u>5. The amount due and owing on the consolidated loan.</u>

/////

Case 2:09-cv-01852-JAM-GGH   Document 44   Filed 09/08/10   Page 2 of 18

discharged is a prime issue in this case.

The guarantee process worked very slowly, and it was not until 2006 that the loan repayment rights were assigned to the Department of Education, which had payed off the entirety of the loan. This action was not brought until mid-2009.

De Kellis believes that his consolidation loan was a "private loan" fully dischargeable in bankruptcy. Without specific explanation, he asserts that he sought a private consolidation loan from Sallie Mae (at a higher interest rate and with other non-beneficial terms) to "extricate[] myself from government sponsored programs. " Of course, if truly a private loan, this extrication would open the door for this debt to be discharged in bankruptcy.

The undersigned finds for purposes of DeKellis' motion to dismiss and the government's cross-motion for summary judgment, that no issue of fact exists to controvert the government's showing that the loan consolidation sought by DeKellis was a FFELP loan, not dischargeable in bankruptcy. The government student loan program weaves a web from which it is difficult to extricate oneself unless the loans are actually paid back. The government is entitled to summary judgment on all issues save for the actual computation of what remains due and owing.

<u>Issues</u>

<u>1. Whether the loan at issue was part of the a guarnateed student loan provisions of federal law, and hence non-dischargeable;</u>

<u>2. Whether any subjective or other wise erroneous belief about the loan predicates can change the nature of the loan received;</u>

<u>3. Whether, in any event, a *material* issue of fact exists concerning the nature of the loan;</u>

<u>4. Whether the Espinosa Supreme Court decision precludes the government from seeking to recover on the loan;</u>

<u>5. The amount due and owing on the consolidated loan.</u>

/////

2

*Discussion*

   *Legal Standard for Motion to Dismiss*

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Summary Judgment Standard Under Rule 56*

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).

Burdens on summary judgment motion differ depending on who will carry the burden of persuasion at trial. "As the party with the burden of persuasion at trial, the [moving party] must establish "beyond controversy every essential element of its' [ ] claim. [The non-moving party] can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). The moving party, United States, would bear the burden of proof.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

4

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Co. V. Zenith Radio Corp, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

*Procedural Facts*

The United States filed its "Complaint for Non-Payment of Student Loan" on July 6, 2009. After counsel for DeKellis withdrew from representation, DeKellis, a lawyer himself, proceeded pro se. He filed a motion to dismiss which was based nearly entirely on his belief that the consolidation loan he received from Sallie Mae was legally not a FFELP loan, and in any event, he believed from representations made by an unnamed Sallie Mae representative that the loan he was receiving was a private loan. The latter point was not appropriate in a motion to dismiss as it relied on facts outside the complaint. The ultimate point of the motion to dismiss

5

was that the government could not collect on a "private loan" that had been discharged in bankruptcy.

The government filed a cross-motion for summary judgment as its opposition to the motion to dismiss. Normally, a motion for summary judgment, which does rely on matters outside the pleadings, is brought prematurely if filed before an answer. However, where it is clear that the answer would not add issues which could be adjudicated in a defendant's favor, or a defendant does not object to the early filing, the court may adjudicate the motion. DeKellis has not objected to the filing of the government's cross-motion, and does not appear to desire to raise any issues on liability outside of his penultimate issue that the bankruptcy discharged his consolidation loan. Therefore, the court will proceed with the government's motion in addition to the motion to dismiss.

*Substantive Facts*

Background

The government brings this action for non-payment of a type of student loan. The complaint, filed July 6, 2009, alleges that the consolidated loan, applied for by De Kellis on November 5, 1992, and which paid off DeKellis' separate student loans, was guaranteed by the California Student Aid Commission ("CSAC") and reinsured by the United States Department of Education ("DOE"). It is further alleges that De Kellis defaulted on the loan on July 13, 1996.[1] The holder of the consolidated loan promissory note, Sallie Mae, obtained payment on the note by CSAC which in turn obtained payment from the DOE, which is now the owner of the note.

De Kellis moves to dismiss the complaint, claiming that the subject loan was obtained through Sallie Mae, a for-profit corporation, which represented that the loan was a privately funded unsubsidized loan bearing the name, "SMART LOAN." In 1994, De Kellis defaulted on the consolidation loan, and believed it to be discharged when he filed for Chapter 7

---

[1] De Kellis claims that he defaulted in 1993 or 1994.

6

bankruptcy that year. In November, 2008, De Kellis discovered for the first time that plaintiff alleged the consolidation loan was a Federal Family Education Loan Program ("FFELP") Loan, and that he was indebted to the government for unpaid sums. He now claims that the loan cannot be characterized as a government loan because when he scheduled it as a private loan in bankruptcy proceedings, neither the government nor Sallie Mae contested his characterization of the debt, which he claims was discharged in bankruptcy on August 23, 1995.

The declaration of the loan analyst for the DOE states that Joseph De Kellis is indebted to the United Sates in the amount of $62,471.19 which includes a principal of $31,090.93 and interest in the amount of $31,380.26 as of October 7, 2008, plus interest of $7.66 per day on the principal for every day after October 7, 2008. (Gorham Decl., Pl.'s Ex. 6.) She also states that the loan was a Federal Family Education Loan Program Consolidation loan from Sallie Mae Student Loan Marketing Association. This "loan obligation was guaranteed by California Student Aid Commission, and then reinsured by the DOE under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682)." (Id.) When plaintiff went into default, the holder of the note, Sallie Mae, was paid on the claim by CSAC, the guarantor, which was then reimbursed by the DOE. Therefore, De Kellis, the borrower, owes the United States the sums set forth above. (Id.)

De Kellis disputes the authenticity of the Gorham declaration, claiming lack of personal knowledge, lack of foundation, and double hearsay.

The Loan Documents

The Application/Promissory Note signed by De Kellis (and conceded by DeKellis as authentic) states above his signature, "[t]his application/promissory note will be governed by Federal law applicable in consolidation loans." (Def.'s Ex. 1 at ¶ 17.) The same Promissory Note states in Section II, "[t]o Sallie Mae: By means of the application, I am applying to have my loans consolidated into a SMART LOAN account at Sallie Mae, as allowed under Section 428C

of the Higher Education Act of 1965, as amended (The Act)." (Def.'s Ex. 1.)  The note further states, "To Whom It May Concern: I hereby authorize you to release to Sallie Mae, for purposes of verifying student loan information in order that I may consolidate my student loans into a consolidation loan ... pursuant to the Higher Education Act of 1965, as amended, any information concerning my student loans that Sallie Mae requests in connection with such loan consolidation..." (Def.'s Ex. 1 at ¶ 18.)  The second page of this exhibit, entitled "Statement of Rights and Responsibilities," states in the first sentence of the section entitled, "Deferment," "[t]o the extent authorized by federal statute, payments of principal will be deferred - but interest will accrue, in the following circumstances...." (Def.'s Ex. 1 at 2.)  In the section entitled "Prepayments," it states, "[u]nder certain circumstances, military personnel may have their loans repaid by the Secretary of Defense, in accordance with Section 902 of the Department of Defense Authorization Act 1981 (10 U.S.C. 214)..." (Id.)  Under the section entitled, "Credit Bureau Notification," the borrower is warned that if he defaults on the loan he will be "ineligible to receive assistance from any of the following Federal programs: Pell Grant, Supplemental Opportunity Grant, College Work-Study, State Student Incentive Grant, Byrd Scholarships, Perkins Loan (formerly called National Direct Student Loans), Guaranteed Student Loans, Supplemental Loans for Students (SLS), PLUS loans or Consolidated Loans...." (Id.)  The Acceleration clause includes the statement, "and federal regulations require the lender to make a final demand for payment." (Id.)  Under the section regarding "Eligibility for Additional Consolidation Loans," it states, "I understand that my status as an eligible borrower under this loan consolidation program under Section 428C of the Act terminates upon my receipt of this loan...." (Id.)  The section entitled "Privacy Act Notice" provides that under the Privacy Act of 1974 (5 U.S.C. § 1974), an agency is required to provide the following notice, and that Sallie Mae provides information from loan applications regarding borrowers of SMART LOAN accounts to the U.S. Department of Education ("DOE").  This section states that the DOE has requested that Sallie May provide the following information:

8

> 1. The authority for collecting the requested information is found in section 428C(b) and 429(b)(1) of the Higher Education Act of 1965, as amended. Applicants are advised that the requested information is necessary for participation in Sallie Mae's SMART LOAN program.

(Id.)

Another disclosure under the Privacy Act section describes the circumstances under which an individual's social security number must be disclosed, when requested to do so by a federal, state, or local government. It adds that social security numbers are required for participants in the SMART LOAN program, as directed by the DOE. (Id.)

The government has provided a Lender Verification Certificate, allegedly signed by De Kellis, which states, "[t]his verification certificate will be relied on by Sallie Mae in paying off the loan(s) and by the U.S. Department of Education in insuring, or reinsuring, and by a guarantee agency in insuring, a consolidation loan which includes the stated payoff amounts on such loan(s)." (Pl.'s Ex. 2.) De Kellis disputes that he signed this form, submitting other forms indicating that his signature was affixed to the form. (De Kellis Decl., ¶ 6.) See Pl.'s Ex. 5; De Kellis' Ex. A (dkt. # 37.) He also disputes receiving the other Lender Verification Certificate. (Pl.'s Ex. 5.)[2]

The Lender Verification Certificate, apparently signed by De Kellis, provides:

> Loan consolidation is a program authorized pursuant to the Higher Education Act of 1965, as amended, and offered by Sallie Mae under which borrowers may apply for a loan to consolidate outstanding Stafford Loans, Guaranteed Student Loans (GSL), Supplemental Loans for Students (SLS) [formerly called Auxiliary Loans to Assist Students (ALAS)], Perkins Loans [formerly called national Defense/Direct Student Loans (NDSL)] and Health Professions Student Loans (HPSL).

(Def.'s Exs. 2, 5.)

The Certificate also provides at the bottom of the document at paragraph 19: "[t]his verification

---

[2] Apparently, DeKellis pre-signed labels, and the labels were attached to the certificates.

9

certificate will be relied on by Sallie Mae in paying off the loan(s) and by the U.S. Department of Education in insuring, or reinsuring, and by a guarantee agency in insuring, a consolidation loan which includes the stated payoff amounts on such loan(s)."  (Id.)

The Disclosure Statement states that the guarantor of the loan is the California Student Aid Commission.  (Id. at Ex. 4.)  De Kellis disputes having knowledge of this form prior to the commencement of this litigation.  (De Kellis Decl., ¶ 5.)

*Analysis*

*The Smart Loan[3] Is A Non-Dischargeable Federally Insured Loan*

DeKellis' attempts to manufacture factual disputes concerning the nature of his consolidation loan fails.  The documents disputed by DeKellis are not needed to establish the government's right to summary judgment on the liability issues.  DeKellis' argument is premised on his belief that if he did not think he was acquiring a student loan subject to government regulation, he therefore did not receive one.  DeKellis does not attempt to rescind the loan (he would be liable to repay the principle and equitable interest if he did), or otherwise avoid it, he merely maintains that his belief that the loan had no governmental connection entitled him to have had it discharged in bankruptcy.  This belief is in error.

As the loan documents suggest, although Sallie Mae may now be a private lender, (it was a governmental entity at the time of consolidation, see footnote 6 below), it is authorized by 20 U.S.C. § 1078-3 to make federally guaranteed consolidation loans.  Those loans were insured by the DOE.  A good explanation of the process is described in In re Lewis, 506 F.3d 927, 929 n.3(9th Cir. 2007):

> Established by the Higher Education Act of 1965, the Guaranteed Student Loan Program (since renamed the Federal Family Education Loan Program) provides interest rate subsidies and federal insurance for private lenders to make student loans pursuant to 20 U.S.C.S. §§ 1078(a) and (c) (1994). Under 20 U.S.C.S. § 1078(c), original lenders sell loans to other lenders to

---

[3] Hereafter, the undersigned will use initial capitals only in referring to the loan.

> raise funds to make, specifically to originate, additional loans. Guaranty agencies guarantee the loans, paying loan holders the amounts due and taking assignment of the loans if students default. The Secretary of Education reinsures the loans and ultimately reimburses guaranty agencies on a sliding scale pursuant to 20 U.S.C.S. § 1078(c)(1).

The Smart Loan, as a consolidation of student loans not dischargeable in bankruptcy, is what it is, and cannot be changed by subjective beliefs.[4] Smart Loans have overwhelmingly been found to constitute federally guaranteed student loans, as cited by the government. See Sheer v. Educational Credit Management Corp., 245 B.R. 236, 239-40 (D. Md. 1999) (citing numerous cases) (involved a Sallie Mae consolidation loan using the same language as appears in the DeKellis application); In re Shaffer, 237 B.R. 617, (N.D. Tex. 1999) (noting majority of courts find consolidation loans in general are educational guaranteed student loans and finding the Sallie Mae Smart Loan is such a loan; application therein contains the same language as appears in the DeKellis application); In re Levernier, 244 B.R. 458, 461(C.D. Cal. 1999) (finding Sallie Mae consolidation loan is educational loan under § 523(a)(8)); Hiatt v. Indiana State Student Assistance Com'n, 36 F.3d 21, 24 (7th Cir. 1994) (same with respect to another lenders' student consolidation loan).

Thus, all of DeKellis' recounting of the facts that an unidentified marketer for Sallie Mae consolidation loans told him this was a "private" loan is irrelevant.[5] Similarly, latter day protestations by DeKellis that he would never have entered into the more onerous "private loan," if it did not "extricate himself" from government student loans, aside from producing an

---

[4] The primary exception is the rigorous "undue hardship" exception. DeKellis does not argue that he is entitled to such an exception.

[5] DeKellis does not even attempt to argue that he may estop the government – something that is very hard to do, if even possible in the first place. "In any event, estoppel against the government is unavailable where petitioners have not lost any rights to which they were entitled," Sulit v. Schiltgen, 213 F.3d 449, 454 (9th Cir.2000). Since DeKellis was not entitled to a Sallie Mae "non-governmental" consolidation loan under the application that he signed, he has lost nothing.

unflattering inference of planning ahead for bankruptcy, is equally irrelevant.  Finally, DeKellis' assertion that Sallie Mae was a completely private, "for profit" corporation when he obtained the consolidation loan, is not only totally erroneous as determined from facts of which the undersigned can take judicial notice,[6] but also irrelevant as the Smart Loan is a "student loan" as a matter of law regardless of the precise legal status of Sallie Mae.

Similarly, DeKellis' citation of various statutes and regulations which govern what is to be contained in applications, or when a lender must declare default are all irrelevant.  If utilized to demonstrate that the violation of such, assuming they were violated, means that the Smart Loan could not have been a loan subject to non-dischargeability provisions applicable to federally guaranteed student loans, DeKellis cites no authority for the proposition.  If DeKellis' argument is that the violation of such automatically negates the original  "federal" aspect of the loans, he further cites no authority for that proposition, or that he has standing to raise these alleged violations when they deal with actions between the entities involved in the loan process.[7]

For example, DeKellis faults Sallie Mae for failing to file a default claim within the period specified in "CFR 682.406(a)(5)."  The regulation applies to the various entities which may be involved with the loan, and do not appear to give the loan recipient any rights in the timely notice of default.  More importantly, nothing in the regulation would appear to transform the consolidation loan into a private loan simply because notices may have been delayed.

Even if there was no established authority providing that Smart Loans were to be treated as government student loans as a matter of law, the Application/Promissory Note

---

[6] The court takes judicial notice that Sallie Mae originated as a government sponsored entity in 1972.  It did not begin to privatize its operations until 1997, a process which was not completed until 2004.  See www.salliemae.com/about/.  Thus, at all relevant times pertaining to DeKellis' acqusition of the Smart Loan, Sallie Mae was a government sponsored entity.

[7] De Kellis also claims that he never completed a Free Application for Federal Student Aid (FAFSA) form or any application for student aid in connection with this loan, which he contends is a prerequisite for obtaining a FFELP loan.  Nevertheless, the government points out that this form was not required for education loans prior to 1993.  Higher Education Amendments of 1992, Pub. L. No. 102-325, § 483(a)(4)(C), 106 Stat. 448, 483.

indisputedly signed by DeKellis, would have placed any reasonable person on notice that the consolidation Smart Loans were governed by federal education laws. The undersigned will not repeat all of the loan language set forth above, but as observed in the Sheer case, the language in the Application/Promissory note referencing "a Smart Loan Account at Sallie Mae, as allowed under Section 428C of the Higher Education Act of 1965, as amended," language which appeared in DeKellis' loan application, clearly would put a reasonable person on notice that one was receiving an education loan pursuant to the federal rules which govern such loans. Sheer 245 B.R. at 239 (n.4). A truly private loan, unconstrained by federal education law, would not contain such language. DeKellis proffers no evidence that Sallie Mae actually issued student consolidation loans, termed "Smart Loans" which were indeed unconstrained by the Higher Education Act, and what that application/promissory note might look like. The only evidence before the court is the Application/Promissory Note which DeKellis did admit to signing, and that loan is a non-dischargeable federal student loan as a matter of law. The other referenced paperwork such as the Loan Verification, again clearly showing the government controlled attributes of the loan, which DeKellis denied receiving or signing, is superfluous and will not create an issue of fact.

Nor does the span of time involved in the government's seeking to recover on DeKellis' defaulted loan preclude this action from proceeding. DeKellis understands that with respect to guaranteed student loans (includes consolidation loans), no statute of limitations exists for their collections. The statute of limitations for defaulted student loans prior to the Higher Education Act of 1965 was six years. When the Higher Education Technical Amendments of 1991 ("HETA") was enacted, it not only eliminated a statute of limitations, but revived all actions which would have been time barred. U.S. v. Phillips, 20 F.3d 1005, 1007 (9th Cir. 1994) (citing cases); 20 U.S.C. § 1091(a)(1).

> The 1991 Amendment to the Higher Education Act states in relevant part that "no limitation shall terminate the period within which suit may be filed, a judgment may be enforced or an offset,

garnishment or other action initiated or taken by ... the Attorney General ... for the repayment of the amount due from a borrower on a loan made under this subchapter.." 20 U.S.C. § 1091a(a)(2)(D) (2009).

U.S. v. Tuerk, 317 Fed. Appx. 251, *1 (March 11, 2009).

In this case, De Kellis' student loan was never discharged, and there is no time bar for collecting on a student loan. U.S. v. Lawrence, 276 F.3d 193, 196 (5th Cir. 2001) (holding that 20 U.S.C. § 1091a "eliminates all limitations defenses for collection of student debts"). DeKellis intimates that the delayed nature of the government's collection efforts indicates that the Sallie Mae loan was really not a government insured loan, i.e., that Sallie Mae, CSAC, and/or the Department of Education made that up at a later time in order to obtain collection from DeKellis, but this rather baseless speculation does not overrule the *fact* that the original loan was constrained by federal law as demonstrated by the Application/Promissory Note.

*Some Material Issues of Fact Exists Concerning the Data in the Gorham Declaration*

Actions to collect federal debts owed are governed by the Federal Rules of Civil Procedure except where otherwise indicated in the Federal Debt Collection Procedure Act. 28 U.S.C. § 3003(f). One such different procedure is the ability of the United States to make declarations on "information and belief" if reliable and reasonably necessary. 28 U.S.C. § 3006. Thus, DeKellis' objection to the declaration based on lack of personal knowledge, even assuming that the declaration does not show personal knowledge, are not meritorious. Moreover, for the reasons set forth by the government, some of DeKellis' challenges to the declaration on the merits are based on a misreading of the declaration.

However, when it comes to the amounts of payments DeKellis made prior to declaration of default, and government forfeiture of other monies apparently due and owing DeKellis for the purpose of repaying the consolidation loan, DeKellis has raised issues of fact. De Kellis declares that he made several payments, and the government forfeited other monies

owing to DeKellis. The Gorham declaration does not make any attempt to detail what DeKellis paid in the way of interest to Sallie Mae prior to his default, nor does it reflect any offsets which may have reduced the debt owed. Counsel's bald statement in the Reply brief that "CSAC credited those offsets before it made its demand on DOE," is not supported at all by evidence. Moreover, DeKellis does not have to prove his case at this juncture in terms of amount due and owing as the government demands; he need only raise issues of fact.

Therefore, the court will permit the government to file a supplemental motion for summary judgment detailing amounts owed and payments/offsets made; DeKellis may oppose it. Any such motion must be made no later than 28 days from the filed date of this Findings/Order.

*The Espinosa Issue*

At hearing, the government was ordered to file supplemental briefing addressing the principle behind one of the court's findings in United Student Aid Funds, Inc. v. Espinosa, ___ U.S. ___, 130 S.Ct. 1367 (March 23, 2010), that where a creditor in a student loan situation receives actual notice of an error pertaining to a Chapter 13 bankruptcy filing but fails to object or appeal in a timely fashion, the creditor is precluded from claiming obligations as non-dischargeable. It will be shown that the case has no applicability to a Chapter 7 discharge.

In Espinosa, a student loan creditor waited three years after the bankruptcy court's discharge order to attempt to collect on a student loan. The Supreme Court held that despite not receiving service of the summons and complaint, the creditor received actual notice of the bankruptcy plan and therefore its due process rights were satisfied such that it could not obtain Rule 60(b) relief from the Bankruptcy Court's confirmation order. Id. at 1378.

The government distinguishes Espinosa here by arguing that De Kellis can reopen his Chapter 7 proceeding at any time to seek discharge of his consolidated loan under 11 U.S.C. § 523(a)(8); however, the debtor in Espinosa could not do so as his proceeding fell under Chapter 13 which resulted in a final confirmation order although the discharged portion of his student loan was entered in disregard of § 523(a)(8). After finding that the creditor had actual notice of

15

1  the bankruptcy's court's legal error in failing to assess undue hardship under § 523(a)(8) before
2  confirming the debtor's plan, the Supreme Court found that the order remained enforceable
3  despite the error because the creditor had actual notice of it and failed to timely object or appeal.
4  Id. at 1380.  The undersigned previously was inclined to agree with the underlying principle in
5  Espinosa regarding actual notice and delay as Sallie Mae had actual notice of the student loan
6  almost 14 years before this complaint was filed.

7  Nevertheless, as the government points out,

> Section 523 (a)(8)'s exclusion of student loans from discharge is 'self-executing' in the sense that '[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt.'  In other words, a debtor's obligation on a student loan remains until there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

12  In re Walker, 427 B.R. 471, 476 (B.A.P. 8th Cir. 2010).

13  The Espinosa court acknowledged the difference between Chapter 13 and Chapter
14  7 proceedings.  It noted that the undue hardship in paragraph 8 of § 523(a) was self-executing in
15  that a lender was not required to file a complaint to determine whether an undue hardship
16  exception applied to non-dischargeability of a student loan.  Id. at 1379 n. 11.  The court pointed
17  out, however, that Espinosa filed a Chapter 13 proceeding and § 523(a) did not apply to such a
18  case.  It stated that § 523(a) provided for a discharge under § 727, *inter alia*, including § 1328(b),
19  but not under § 1328(a) (Espinosa's case) which involves a different type of discharge on
20  completion of the plan, via a final order by the bankruptcy court granting the debtor a discharge
21  of all debts except those specified in certain sections, including § 523(a).  "Section 1328(a) thus
22  incorporates by reference *paragraph (8)* of § 523(a), including that paragraph's self-executing
23  requirement for an undue hardship determination, but does not incorporate the 'does not
24  discharge' text of § 523(a) itself."  Id. (emphasis in original.)

25  The holding in Espinosa concerning the creditor's delay in moving for relief under
26  Rule 60(b) is distinguishable because it involved a chapter 13 proceeding which requires a plan

spanning over three to five years, a confirmation hearing involving creditors, and a final order before the discharge takes effect. Creditors have the opportunity to object to the plan before the order is final. The order confirming the plan is a final judgment. Espinosa, 130 S.Ct. at 1376. The creditor's delay in that case pertained to the Rule 60(b) relief sought to reopen the confirmation order.

De Kellis' bankruptcy proceedings, in contrast, were brought under Chapter 7, which involves no plan, no confirmation hearing, no final confirmation order, and is usually resolved in months, not years. The debtor is discharged, and has the onus to seek relief from non-dischargeable loans under § 523(a)(8) as applicable. The burden is on the debtor to specifically exempt certain loans from non-dischargeability by filing a request under § 523(a)(8). Without such a request which is approved by the court, the statute applies. The fact that De Kellis listed Sallie Mae as a "non-governmental non-priority unsecured obligation," (Def.'s Mot., Ex. B), is of no consequence because he never sought relief from the non-dischargeable nature of this loan. See In re De Kellis, 94-29828-B-7.

Therefore, the government is not barred by Espinosa in seeking collection of the loan.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss, filed June 10, 2010, (dkt. #34), be denied;

2. The government's cross motion for summary judgment, filed June 30, 2010, (dkt. #36), be granted in all respects save for the amounts due and owing.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the

1  objections shall be served and filed within fourteen (14) days after service of the objections.  The
2  parties are advised that failure to file objections within the specified time may waive the right to
3  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4          IT IS HEREBY ORDERED that plaintiff may file a supplemental motion for
5  summary judgment with respect to the amounts due and owing as a result of default on the Smart
6  Loan at issue if filed within twenty-eight days of the filed date of this order.
7  DATED: September 8, 2010

                                         /s/ Gregory G. Hollows
                                         _____
                                         GREGORY G. HOLLOWS
                                         UNITED STATES MAGISTRATE JUDGE

GGH:076
USDeKellis.fr